**GOLDBERGER & DUBIN, PC**
Stacey Van Malden, Esq. (Bar No.: SV8077)
Of Counsel
401 Broadway, suite 306
New York, New York 10013
Phone: 212-431-9380
Email: GND401@AOL.COM

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (Cal. Bar No. 295032)*
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (Cal. Bar No. 244902)*
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*To be admitted *Pro Hac Vice*

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IAN LOCKE, Individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>BEAR'S FRUIT, LLC,<br><br>                Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

CLASS ACTION COMPLAINT

Plaintiff Ian Locke ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Bear's Fruit, LLC ("Defendant").  Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## I.  INTRODUCTION

1.    Defendant Bear's Fruit, LLC has passed off millions of bottles of its Bear's Fruit Kombucha[1] beverages as non-alcoholic, when, in fact, the beverages contain 92 to 286 percent more alcohol than the legal limit for non-alcoholic beverages.  To make matters worse, Defendant covertly sells these clearly alcoholic beverages to people by touting the products' purported health benefits and with statements meant to induce trust, like "Health without compromise," "What's in our bottle is on our label. Period." and "Do no harm."[2]  Every can and bottle of Bear's Fruit Kombucha also contains the statement on the front "just fruit & herbs *no weird stuff*," along with vibrant pictures of fruit, berries, and herbs associated with each respective flavor. But the most important ingredient in the beverages – alcohol nearly three times the legal limit – is not "on [the] label."  Defendant's kombucha Products are not just fruit & herbs, and they certainly contain "weird stuff," as the very nature of the Products is not as it seems.  These are not the fruity fermented tea beverages they appear to be – they are alcoholic beverages that should bear the surgeon general alcohol warning, that should not be sold to persons under the age of 21, and that cannot be sold as non-alcoholic products in disguise.  Defendant's Bear's Fruit Kombucha is a misbranded product that is not legal to sell.  Indeed, it is a crime to do so.

2.    On the back of the labels in tiny print, the labels state: "Contains less than .5% Alc by Vol."  That is false.  0.5% alcohol by volume ("abv") is the legal limit for alcohol that a "non

---

[1] Bear's Fruit Kombucha or "Products" refers to every flavor of Defendant's "bear's fruit KOMBUCHA" beverages sold nationwide, as described herein, including, but not limited to, the following flavors: strawberry jalapeno, ginger lemon rosemary, pineapple mint, and blueberry lavender.  The various flavors of Bear's Fruit Kombucha are substantially identical other than their flavor profile, as each flavor is above the 0.5 percent alcohol by volume threshold.  None of the flavors has the requisite government warning required for alcoholic beverages.
[2] https://www.bearsfruit.com/pages/our-story

alcoholic" beverage can contain under federal and state regulations.  Beverages above that threshold are legally considered alcoholic beverages, and are subject to strict taxation, distribution, manufacture, labeling, and marketing requirements imposed on alcoholic beverages.  Bear's Fruit Kombucha contains between .96%-1.43% abv, or 92 to 286 percent more alcohol than the legal limit.  This is not a close call.  These results are not the result of a rounding error.  Every flavor of Bear's Fruit Kombucha was subjected to multiple rounds of testing by one of the most preeminent alcohol testing laboratories in the country, with every bottle coming in nearly two to three times the legal limit for purported nonalcoholic beverages.  The bottles were shipped by Defendant Bear's Fruit, LLC *directly to the lab*, immediately refrigerated upon arrival, kept cold the entire time prior to testing, and tested well before the stated expiration dates on the Products' labels.  These Products are alcoholic.

3.      Plaintiff purchased numerous bottles of Bear's Fruit Kombucha, in every flavor, based on Defendant's misleading advertising and labeling of the products.

4.      Plaintiff seeks relief in this action individually, and on behalf of all purchasers of Bear's Fruit Kombucha, for Defendant's violations of New York's Deceptive and Unfair Trade Practices Act, New York General Business Law §§ 349 and 350 ("NYGBL"), for breach of express and implied warranties, fraud, and unjust enrichment.

## II.  PARTIES

5.      Plaintiff Ian Locke is a citizen of New York, residing in Brooklyn.  Within the past two years, Plaintiff has purchased every flavor of Bear's Fruit Kombucha that he came across on the market, including strawberry jalapeno, ginger lemon rosemary, pineapple mint, and blueberry lavender.  Plaintiff purchased Bear's Fruit Kombucha in multiple retail locations near his home in Brooklyn, including a Whole Foods store and other smaller regional shops and bodegas.  Plaintiff purchased Bear's Fruit Kombucha with the belief and on the basis that the products were non-alcoholic.  Indeed, Plaintiff primarily purchased the Products to use for what he believed as a *substitute* for alcoholic beverages, as he was attempting to decrease or eliminate the amount of alcoholic beverages he consumed.  The labels of the Products made him believe that the Products

1   were purportedly healthy beverages and were not alcoholic beverages, making several Health

2   Claims.  The Health Claims were part of the basis of the bargain.  The labels of the Products he

3   purchased did not bear a government warning concerning the consumption of alcoholic beverages,

4   nor any other clear or conspicuous warning regarding the beverages' high alcohol content.

5   Plaintiff did not have to show any identification of his age in order to purchase the Products.  The

6   Products were displayed in a section separate from other alcoholic beverages at the retail locations

7   at which he made his purchases.  Plaintiff would not have purchased the Products at the time, or

8   would have paid significantly less for them, had he known that they contained significant levels of

9   alcohol and were considered alcoholic beverages.  Further, Plaintiff would not have purchased the

10  Products at the time, or would have paid significantly less for them, had Defendant not made the

11  unlawful Health Claims.

12       6.     Plaintiff will be unable to rely on Bear's Fruit Kombucha's labeling and advertising

13  in the future, and so will be unable to purchase Bear's Fruit Kombucha in the future, although he

14  would like to.  Plaintiff continues to purchase kombucha products, although he does not currently

15  purchase Bear's Fruit Kombucha, and intends on continuing purchasing kombucha products in the

16  future.

17       7.     Defendant Bear's Fruit, LLC is a Delaware limited liability company headquartered

18  and with its principal place of business located at 67 35th Street, Building 5, 4th Floor, Unit C405,

19  Brooklyn, NY 11206.  Defendant manufactures, advertises, sells, distributes, and markets Bear's

20  Fruit Kombucha as alleged herein nationwide, including in New York.  Defendant's misleading

21  marketing, advertising and product information concerning the alcohol content in Bear's Fruit

22  Kombucha was conceived, reviewed, approved, and otherwise controlled from Defendant's New

23  York headquarters.  All critical decisions regarding the misleading alcohol marketing and labeling

24  of Bear's Fruit Kombucha were made in New York.

### III.  JURISDICTION AND VENUE

25

26       8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

27  because this case is a class action where the aggregate claims of all members of the proposed class

28

are in excess of $5,000,000, exclusive of interest and costs, and most members of the proposed class are citizens of states different from the state of Defendant.  Defendant has sold hundreds of thousands, if not millions, of bottles of Bear's Fruit Kombucha throughout the country.

9.     This Court has general jurisdiction over Defendant because it is headquartered in New York, and has its principal place of business in New York.  Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within New York such that Defendant has significant, continuous, and pervasive contacts with the State of New York.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged mislabeling, misbranding, and marketing practices have been disseminated and committed in this District, because Defendant is headquartered in this District, and because Plaintiff is located in this District.

## IV.  FACTS COMMON TO ALL CAUSES OF ACTION

**A.     Background Regarding Continued Fermentation Of Unpasteurized Kombucha Beverages**

11.     The name "kombucha" comes from the common name for what is essentially a fermented tea drink.  Kombucha is made of tea that ferments for up to a month (or more) while a "blob" of bacteria known as "scoby" (for symbiotic colony of bacteria and yeast) floats on top. The scoby purportedly eats the sugar, acids, and caffeine in the tea, and creates a mixture of live microorganisms.  Basic chemistry explains that the scoby converts the sugar into carbon dioxide and alcohol.

12.     The Alcohol and Tobacco Tax and Trade Bureau ("TTB") describe kombucha as follows:

> The term "kombucha" generally refers to a fermented beverage produced from a mixture of steeped tea and sugar, combined with a culture of yeast strains and bacteria.  Some kombucha products also have fruit juice or other flavors added during production.  The combination of sugar and yeast triggers fermentation, which may

produce a kombucha with an alcohol content of 0.5% or more alcohol by volume.[3]

13.     While pasteurized versions of kombucha products are non-alcoholic, as the pasteurization kills the yeast in the kombucha, raw (unpasteurized) versions of kombucha become more and more alcoholic over time as the living yeast in the beverage converts sugars into alcohol. Such natural conversion of sugar to alcohol in unpasteurized kombucha beverages can result in alcohol levels as high as 4-5 percent alcohol by volume, roughly the same alcohol content as regular beer.

14.     Defendant proudly serves Bear's Fruit Kombucha as a "raw" kombucha.  It says so on the beverages' labels: "whole, raw, delicious."  The "raw" nature of the beverage is reinforced with other statements on the Products' labels like "Billions of probiotics for a happy gut."  If the Products were pasteurized, pasteurization would have killed off the "billions of probiotics."

15.     Because Defendant's Bear's Fruit Kombucha is unpasteurized, the Products predictably undergo a natural fermentation process where the yeast in the beverages converts the sugar in the products into alcohol.  As discussed herein, the fermentation continues to such a high extent that the Products contain nearly two to three times the legal limit of alcohol by volume by the time they reach store shelves.

**B.      Alcohol And Labeling Regulations Pertaining To Kombucha**

16.     The TTB has for many years had a webpage dedicated to explaining the alcohol regulations and labeling requirements applicable to kombucha beverages that may exceed 0.5% abv.   Currently, the TTB website states: "Under federal law, if the alcohol content of kombucha is 0.5% or more alcohol by volume, at any time during production, when bottled, or at any time after bottling, the kombucha is an alcohol beverage and is subject to TTB regulations."[4]

17.     The TTB's website then provides the following large and very simple table:

---

[3] https://www.ttb.gov/regulated-commodities/beverage-alcohol/kombucha
[4] https://www.ttb.gov/regulated-commodities/beverage-alcohol/kombucha

| | |
|---|---|
| **Kombucha is AT OR ABOVE 0.5% alcohol by volume at any time**<br><br><br><br>**TTB Regulations**<br>**DO APPLY**<br><br>• Visit our <u>Kombucha Information and Resources</u> for TTB requirements, and other information about kombucha testing, production, distribution, and labeling.<br>• All kombucha also must comply with any applicable state and local requirements. | **Kombucha is NEVER at or above 0.5% alcohol by volume during production, at time of bottling, or after bottling**<br><br><br><br>**TTB Regulations**<br>**DO NOT APPLY**<br><br>• This type of kombucha must comply with all applicable Food and Drug Administration (FDA) regulations. See <u>FDA.gov</u> for more information.<br>• All kombucha also must comply with any applicable state and local requirements. |

18.     As the TTB makes very clear, federal and state alcohol regulations apply to kombucha if the beverage reaches 0.5% alcohol by volume "during production, at time of bottling, or after bottling," meaning: at any point in their lifetime, including at the retail level or once customers buy the beverages and consume them.

19.     Indeed, just below the above table, the TTB website contains the following announcement:

> ⚠️ **IMPORTANT**
>
> TTB regulations on alcohol beverages **DO APPLY** to any kombucha that has less than 0.5% alcohol by volume when bottled ***BUT the alcohol content increases to 0.5% or more alcohol by volume at any point afterwards*** as a result of continued fermentation in the bottle.
>
> Failure to comply with federal laws and regulations governing the production, bottling, labeling, and distribution of alcohol beverages, including kombucha that contains 0.5% or more alcohol by volume, may lead to enforcement actions, such as the assessment of tax, penalties, and interest, in addition to potential civil and criminal penalties**.**

20.     The TTB also has a Kombucha Information and Resources page, styled in the form of Questions and Answers.[5]  The following Questions and Answers provide clarity as to state and federal regulations applicable to kombucha.

21.     TTB Question 2 ("K2"):"Are kombucha products alcohol beverages"

---

[5] https://www.ttb.gov/regulated-commodities/beverage-alcohol/kombucha/kombucha-general

Some kombucha products contain 0.5% or more alcohol by volume. These products are alcohol beverages and are consequently subject to TTB regulations.

It is important to note that regardless of the alcohol content of the finished beverage, when kombucha reaches 0.5% alcohol or more by volume at any time during the production process, it must be produced on a TTB-qualified premises and is subject to TTB regulation. Thus, for example, a producer of a kombucha-style beer that reaches an alcohol content of 1.2% alcohol by volume during production must qualify as a brewer and comply with TTB regulations in 27 CFR part 25, even if the finished product is a non-alcoholic beverage (containing less than 0.5% alcohol by volume)

For purposes of these FAQs, we are assuming that the kombucha products that we are addressing would derive alcohol primarily from the fermentation of sugar, and, thus would be classified as beer under the IRC and TTB regulations if they contain 0.5% or more alcohol by volume. See K6 for additional information on how kombucha containing 0.5% or more alcohol by volume is classified under federal law.

22.    TTB Question 3 ("K3"): "What causes a kombucha to continue fermenting in the original container after removal from the producer's premises?"

Fermentation, which is part of kombucha production, is a natural reaction when sugar and yeast are combined. Several factors can influence how much alcohol is produced by fermentation, including time and temperature.

Even though a kombucha beverage may have less than 0.5% alcohol by volume at the time of bottling, fermentation may continue in the bottle after it leaves the production facility, depending on how the kombucha beverage is made and stored. As a result, the alcohol content may increase to 0.5% or more alcohol by volume. Such a product is an alcohol beverage, which is subject to the laws and regulations governing the production, taxation, labeling, marketing, and distribution of alcohol beverages.

23.    TTB Question 6 ("K6"): How does the Internal Revenue Code of 1986, as amended (IRC) classify kombucha that contains 0.5% or more alcohol by volume?

Because "kombucha" does not refer to a recognized classification of alcohol beverage, the classification of kombucha under the IRC depends on its formulation and method of production. For example, under the IRC, beer may be fermented from malted barley or a substitute for malt, such as sugar.

If the alcohol content of a kombucha is 0.5% or more by volume, and the alcohol is derived from the fermentation of sugar or another appropriate substitute for malt, it will generally be classified as beer under the IRC and TTB regulations at 27 CFR part 25.  For more information on the definition of beer, see 26 U.S.C. 5052(a) and 27 CFR 25.15.[6]

It is possible to produce a kombucha-style product that is classified as a wine or distilled spirits product.  However, for purposes of these FAQs, we are assuming that the kombucha products that we are addressing derive alcohol primarily from the fermentation of sugar, and, thus would be classified as beer under the IRC and TTB regulations if they contain 0.5% or more alcohol by volume.

24.    TTB Question 8 ("K8"): "What if kombucha contains less than 0.5% alcohol by volume at the time of bottling, but the alcohol content increases to 0.5% or more due to continued fermentation in the bottle?"

Such products are alcohol beverages under the IRC and must comply with all the same federal laws and regulations as a kombucha manufactured as an alcohol beverage, including payment of the appropriate federal excise taxes and the requirement to include the Health Warning Statement on the product labels.

If TTB picks up a sample of kombucha in the marketplace and determines that the sample has an alcohol content of 0.5% or more alcohol by volume, TTB will expect the producer to either:

- Take corrective steps, such as adopting a manufacturing method to ensure that fermentation does not continue after bottling; or
- Qualify with TTB as a producer of alcohol beverages.

To avoid potential liability for violations of the IRC and ABLA, a manufacturer of kombucha who is not qualified as a brewer but wishes to produce kombucha as a non-alcoholic beverage should use a method of production that ensures that the alcohol content of the kombucha will not increase after removal from the premises due to continued fermentation in the container.

25.    TTB Question 9 ("K9"): "I produce kombucha that is intended to be kept refrigerated, but it was stored by the retailer in an unrefrigerated area, and the alcohol content

---

[6] As discussed herein, Bear's Fruit Kombucha derives alcohol primarily from the fermentation of sugar, and accordingly qualify as "beer" under the relevant regulations.

increased to 0.5% or more alcohol by volume due to continued fermentation in the bottle.  Am I liable for the taxes?"

> Yes, you are liable for the federal excise taxes on this alcohol beverage, and you may face other liability under federal law. Refrigeration of the product is not an adequate method of ensuring that the alcohol content will not increase while in the original container after removal because, among other things, you cannot control whether the product will be refrigerated after removal.
>
> If TTB picks up a sample of kombucha in the marketplace and determines that the sample has an alcohol content of 0.5% or more alcohol by volume, TTB will expect the producer to either:
>
> - Take corrective steps, such as adopting a manufacturing method to ensure that fermentation does not continue after bottling; or
> - Qualify with TTB as a producer of alcohol beverages.
>
> To avoid potential liability for violations of the IRC and ABLA, a manufacturer of kombucha who is not qualified as a brewer but wishes to produce kombucha as a non-alcoholic beverage should use a method of production that ensures that the alcohol content of the kombucha will not increase after removal from the premises due to continued fermentation in the container.

26.    TTB Question 11 ("K11"): "Are kombucha containers required to bear a health warning statement?"

> Yes, if the kombucha beverage contains 0.5 percent or more alcohol by volume. The container of any alcohol beverage sold or distributed in the United States with an alcohol content of 0.5 percent or more must bear the health warning statement required by the Alcoholic Beverage Labeling Act of 1988.  (See 27 U.S.C. 215 and 27 CFR part 16.) This requirement applies regardless of whether the kombucha is subject to the labeling requirements of the Federal Alcohol Administration Act (FAA Act). (See K13.)
>
> See 27 CFR part 16 for the wording, type size and other formatting rules regarding the health warning statement.

27.    In turn, 27 C.F.R. § 16.10 defines "Alcoholic beverage" as "any beverage in liquid form which contains not less than one-half of one percent (.5%) of alcohol by volume and is intended for human consumption."  27 C.F.R. § 16.20 goes on to state that "no person shall bottle for sale or distribution in the United States any alcoholic beverage unless the container of such

beverage bears the health warning statement required by § 16.21."  27 C.F.R. § 16.21 states that "[t]here shall be stated on the brand label or separate front label, or on a back or side label, separate and apart from all other information, the following statement: GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems."  Despite the clear mandate to include the health warning on the labels of the Products, Bear's Fruit Kombucha does not contain the statement required by 27 C.F.R. § 16.21.

28.    TBB Question 12 ("K12"): "What labeling requirements apply to my kombucha under the IRC?"

> IRC labeling requirements apply to all kombucha products that contain 0.5 percent or more alcohol by volume, regardless of whether the product is also subject to the labeling requirements of the FAA Act.  (See K13.)
>
> If your kombucha is classified as a beer, you must comply with the labeling and marking regulations at 27 CFR 25.141-25.145, including the requirement that each container must show by label or otherwise:
>
> - The name or trade name of the brewer;
> - The net contents of the container;
> - The nature of the product (such as "beer"); and
> - The place of production.

29.    TTB Question 13 ("K13"): "Deso the Federal Alcohol Administration Act (FAA Act), including its additional label requirements, apply to kombucha with an alcohol content of 0.5 percent or more?"

> The determination of whether a kombucha falls within the classification of a malt beverage, wine, or distilled spirits product under the FAA Act must be made on a case-by-case basis, depending on the formulation and method of production.  Products subject to the FAA Act must comply with its labeling and advertising regulations, trade practice rules, and additional qualification requirements.

> Some alcohol beverages are subject to tax as beer, but are not subject to the requirements of the FAA Act. For example, beer (other than saké or similar products) that is made without both malted barley and hops is not subject to the labeling requirements of the FAA Act and must instead comply with FDA labeling requirements. Such products are still subject to the marking requirements of the IRC and the health warning statement requirements of ABLA.
>
> For more information on brewery products not subject to the FAA Act's labeling and advertising regulations, see TTB Ruling 2008-3.

30.     The FDA clarifies that such alcoholic beverages are subject to the nutrition labeling requirements set out at 21 C.F.R. 101.9, and the general requirements of 21 C.F.R. 101.3 and 21 C.F.R. 101.4.[7]  Because Bear's Fruit Kombucha is "made without both malted barley and hops," Bear's Fruit Kombucha is also subject to the general nutrition labeling requirements set out by the FDA.  Accordingly, the labels of Bear's Fruit Kombucha are subject to the "false and misleading" standard of 21 U.S.C. § 343(a)(1) and the corresponding state law counterparts that track the federal standards.  *See, e.g.*, 1 N.Y.C.R.R. § 259.1 ("the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations … in the area of food packaging and labeling").  Because Bear's Fruit Kombucha contains alcohol above 0.5 percent by volume, it is misbranded under the FDA's labeling requirements, and the corresponding state law counterparts that track the federal standards.

31.     TTB Question 19 ("K19"): "May I use other scientifically valid methods to test the alcohol content of my kombucha beverages?"

> Yes.  To ensure the reliability of results, producers may use any method that has been formally validated (e.g., that underwent a multi-laboratory performance evaluation) or that is otherwise scientifically valid for purposes of determining the alcohol content of kombucha beverages, including kombucha beverages that contain less than 0.5 percent alcohol by volume.

---

[7] U.S. Food and Drug Administration, *Labeling of Certain Beers Subject to the Labeling Jurisdiction of the Food and Drug Administration: Guidance for Industry*, April 2023.  Available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-labeling-certain-beers-subject-labeling-jurisdiction-food-and-drug-administration.

A scientifically valid method is, among other things, accurate, precise, and specific for its intended purpose, and produces results that are consistently reliable, accurate, and reproducible.

TTB is aware of the following scientifically valid methods that can be used to measure low levels of alcohol in kombucha:

- Headspace GC-FID (AOAC reference 2016.12);

- Headspace Solid Phase Micro Extractions (SPME) GC-MS (AOAC reference 2019.4);

- Distillation-specific gravity method (AOAC reference 935.21), using a densitometer instead of a pycnometer; and

- Two enzymatic methods (AOAC references 2017.07 and 2019.08).

32.     Given that kombucha beverages are relatively new within the United States marketplace, the TTB's website has evolved since the kombucha first came across the TTB's radar 10-15 years ago. Previously, the TTB's website also stated that "TTB's initial testing of kombucha in the marketplace reveals that many of these products contain at least 0.5 percent alcohol by volume. These products are alcohol beverages and are consequently subject to regulation."[8]  At the time, the TTB stated that its "primary concern is to ensure that consumers are not misled about the nature of alcohol beverage products that might be marketed as non-alcoholic beverages. It is important that consumers are adequately informed about the nature of these products."

33.     Defendant's sale and marketing of Bear's Fruit Kombucha as a non-alcoholic beverage also violates a host of New York (and, as far as Plaintiff knows, every other state's) consumer health and safety regulations. For instance, it is a crime to sell alcohol like Defendant's Products to persons under the age of 21, just as it is a crime for someone under the age of 21 to buy such products. Defendant has to be licensed by the State, and comply with a host of labeling and distribution rules concerning the sale of alcoholic beverages. Because the Products are alcoholic, it is also a crime for customers to carry open alcoholic beverages in public places or while driving. Driving after consuming the Products also subjects customers to DUI offenses, as well as create possible criminal, civil, and personal liability if their intoxication from consuming the Products

---

[8] https://web.archive.org/web/20150818084444/http://www.ttb.gov/faqs/kombucha-faqs.shtml

causes injury to anyone else or causes an accident at work.  New York's alcohol regulations also require that the labels of the Products contain "[a]ll other labeling information required by TTB."[9]

34.    Further, regulation of alcohol is primarily a function of state and local regulation after the passage of the 21st Amendment.  Under New York law (and most, if not all, other state's laws) alcoholic beverages may not contain "[a]ny false or untrue statement," "[a]ny statement, design, device or representation that may mislead a consumer," or "[a]ny statement or claim that the product has any health benefits."[10]

### C.    Bear's Fruit Kombucha Labeling

35.    Defendant sell four flavors of Bear's Fruit Kombucha (blueberry lavender, pineapple mint, strawberry jalapeno, and ginger lemon rosemary), all of which are effectively identical kombucha products with varying flavor profiles.  Other than minor differences concerning the flavoring of the beverages, the labels are otherwise identical.  An image of the front of the cans of all four flavors is depicted below.

   

---

[9] https://sla.ny.gov/brand-label-registration#:~:text=All%20alcoholic%20beverages%20sold%20in,wine%20specialties%20sold%20in%20NY.
[10] *Id.*

CLASS ACTION COMPLAINT                                                                                          13

36.     The beverages' labels are replete with various health claims and pictures meant to convey the health-promoting properties of the products.  On the front label, the Products state, "just fruit & herbs *no weird stuff*."  The Products contain large depictions of fruits, berries, and herbs, along with statements that the ingredients are "organic."  On side, the labels state "supports digestion + immunity," as depicted below.



37.     On the other side of the label, the Products have the "whole, raw, delicious"

representation, along with a statement that "Our kombucha is brewed with 100% fruit & herbs – no

sugary juices, 'natural flavors' or any other weird stuff.  It's not as easy, but the taste is worth the

extra effort.  Happy sipping."



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38.    Just to the side of the front label, the Products prominently state: "Billions of probiotics for a happy gut."

39.    Just to the left of the Nutrition Facts panel, in vertical small text, the Products state: "Contains less than .5% Alc by Vol – Keep Refrigerated."



### D.    Testing From TTB Accredited Laboratory Shows That Bear's Fruit Kombucha Has More Than 0.5% Alcohol By Volume

40.    Brewing & Distilling Analytical Services, LLC ("BDAS"), an Alcohol and Tobacco Tax and Trade Bureau certified laboratory, conducted tests on multiple batches of every flavor of Bear's Fruit Kombucha.  BDAS utilized two scientifically valid, TTB approved methodologies for testing kombucha beverages.  The testing methodologies have undergone multi-laboratory performance evaluations and are scientifically valid for purposes of determining the alcohol content of kombucha beverages, including kombucha beverages that contain less than 0.5 percent alcohol by volume.

41.    Each test showed that every bottle of the Products tested contained a level of alcohol by volume greater than 0.5 percent.  Specifically, Defendant Bear's Fruit, LLC shipped a batch of every flavor of Bear's Fruit Kombucha directly to BDAS in July 2024.  The batch was immediately refrigerated upon arrival to BDAS, kept cold at all times, and then tested on August 7, 2024, more than 7 months prior to the listed expiration date on the Products' bottles.  Every flavor tested above 0.5% abv, with a range of 1.01 to 1.43% abv according to a scientifically valid testing methodology.

42.    Defendant Bear's Fruit, LLC then shipped another batch of every flavor of Bear's Fruit Kombucha directly to BDAS in late August 2024.  As with the prior batch, the Products were immediately refrigerated upon arrival to BDAS, kept cold at all times, and then tested on September 4, 2024, seven months prior to the listed expiration date on the Products' bottles.  Again, every flavor tested above 0.5% abv, with a range of 0.96 to 1.30% abv according to a scientifically valid testing methodology.  The testing lab then tested the four flavors from this batch again using a different methodology involving lab distillation following by densitometry (AOAC 935.21), using a different methodology that the TTB stated is a "scientifically valid method," as discussed above.  Using the second TTB-approved method, the second testing methodology consistently showed that each of the flavors of Bear's Fruit Kombucha was well above the 0.5% alcohol by volume limit, ranging from .89-1.19% alcohol by volume.

**E.    Defendant's Sale Of Bear's Fruit Kombucha As A Non-Alcoholic Beverage Is Highly Misleading And Material To Consumers**

43.    Defendant's sale and marketing of Bear's Fruit Kombucha as non-alcoholic, and its omission of the beverages' true alcoholic content and the mandated health warning, is highly misleading to a reasonable consumer, including Plaintiff.  Because Bear's Fruit Kombucha does not include the required warnings concerning the significant presence of alcohol, consumers, including Plaintiff, are led to believe that the products are safe to consume when driving a car, operating machinery, and taking with potentially a deadly cocktail of incompatible medications.

44.    Further, because relevant state and federal laws severely curb the use of any health claims on the labels of alcoholic beverages (with the State of New York barring such claims completely), consumers are not used to seeing alcoholic beverages with health claims as those on Defendant's Products on alcoholic beverages.  The inclusion of such "Health Claims,"[11] in combination of the omission of the required alcohol warning, and the false statement that the Products "Contain[] less than .5% Alc by Vol," has the effect of giving reasonable consumers the impression that the Products are not alcoholic beverages.  Further, reasonable consumers, including Plaintiff, find the Health Claims to be material and is one of the reasons that they purchase the Products, despite the fact that such claims are illegal and cannot be used on the Products because they are alcoholic beverages.  Consumers pay a price premium based on the Health Claim and the omission of the required alcohol warning statement.

45.    Defendant's sale and marketing of Bear's Fruit Kombucha as non-alcoholic and purported health beverage, by omitting to disclose their true content, is highly misleading to a reasonable consumer, including Plaintiff.

46.    Defendant made, and continues to make, unlawful and misleading claims on the labels of Bear's Fruit Kombucha that are prohibited by federal and state laws, and which render these products misbranded.  Under federal and state law, Bear's Fruit Kombucha cannot legally be

---

[11] Health Claims refers to all putative health claims on the Products labels, such as "billions of probiotics for a happy gut," "Our kombucha is brewed with 100% fruit & herbs – no sugary juices, 'natural flavors,' or any other weird stuff," "supports digestion + immunity," "whole, raw, delicious," and "just fruit & herbs *no weird stuff*."

manufactured, distributed, held, or sold.  Indeed, it is a crime to sell these Products in their current form.

47.    Like other alcohol, Bear's Fruit Kombucha may in fact cause health problems, is not safe to consume while driving or operating machinery, and may increase the chance of birth defects if consumed during pregnancy.  For these reasons, Bear's Fruit Kombucha must bear the government warning mandated by 27 C.F.R. § 16.21 and is misbranded under State and Federal law.

## CLASS REPRESENTATION ALLEGATIONS

48.    Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the applicable statute of limitations and the date that class notice is disseminated, purchased Bear's Fruit Kombucha.

49.    Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased Bear's Fruit Kombucha in New York (the "New York Subclass").

50.    Plaintiff reserves the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

51.    Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

52.    Also excluded from the Class are persons or entities that purchased Bear's Fruit Kombucha for purposes of resale.

53.    Plaintiff is a member of the Classes he seeks to represent.

54.    Defendant sells hundreds of thousands, if not millions, of bottles of Bear's Fruit Kombucha.  Bear's Fruit Kombucha is available in major supermarkets throughout much of the country, including in New York, and nationwide for purchases made online (including on Defendant's website).  Accordingly, members of the Class are so numerous that their individual

joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, third party retailers, and vendors.

55.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Bear's Fruit Kombucha is misbranded, and whether the labeling, marketing and promotion of Bear's Fruit Kombucha is false and misleading.

56.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to and relied on Defendant's false, misleading and misbranded labels (and was influenced by the material omissions on the labels), purchased Bear's Fruit Kombucha, and suffered losses as a result of those purchases.

57.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

58.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment

of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**

**Violation of New York's Consumer Protection Act,**

**New York General Business Law § 349, et seq.**

59.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

60.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

61.     New York Gen. Bus. Law, § 349, *et seq.* prohibits the "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state."

62.     Defendant's marketing and labeling of Bear's Fruit Kombucha as a non-alcoholic beverage, and the absence of the government mandated warning for alcoholic beverages, makes such advertising false and misleading to a reasonable consumer, including Plaintiff, because Bear's Fruit Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law.  Further, the lack of appropriate warning on the labels of Bear's Fruit Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy.  The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction.  Without the appropriate warning and notice that the beverage is alcoholic, Bear's Fruit Kombucha is an unreasonably dangerous product that is unfit for sale.  Defendant's failure to comply with federal and New York labeling requirements, as well as making unlawful Health Claims, and deceptive advertising concerning the alcohol content of Bear's Fruit Kombucha offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  Accordingly, Defendant's

practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets

Law § 201 in that Bear's Fruit Kombucha is misbranded.

63.    The foregoing deceptive acts and practices were directed at consumers.

64.    The foregoing deceptive acts and practices are misleading in a material way because

they fundamentally misrepresent the characteristics of Bear's Fruit Kombucha to induce consumers

to purchase same.

65.    Plaintiff, the Class, and New York Subclass members suffered a loss as a result of

Defendant's deceptive and unfair trade acts.  Specifically, as a result of Defendant's deceptive and

unfair trade acts and practices, Plaintiff and members of the Classes suffered monetary losses

associated with the purchase of Bear's Fruit Kombucha because (a) they would not have purchased

Bear's Fruit Kombucha absent Defendant's omission of a government warning concerning the

product's alcohol content; (b) they would not have purchased Bear's Fruit Kombucha absent the

Health Claims; (c) they would not have purchased Bear's Fruit Kombucha on the same terms

absent Defendant's representations and omissions; (d) they paid a price premium for Bear's Fruit

Kombucha due to Defendant's misrepresentations and omissions; and (e) Bear's Fruit Kombucha

did not have the characteristics, benefits, or quantities as promised.

## COUNT II

## Violation of New York's False Advertising Law,

## New York General Business Law § 350, et seq.

66.    Plaintiff hereby incorporates by reference the allegations contained in all preceding

paragraphs of this complaint.

67.    Plaintiff brings this claim individually and on behalf of the members of the

proposed Class and New York Subclass against Defendant.

68.    The New York False Advertising Law, codified at Gen. Bus. Law § 350, *et seq.*,

prohibits advertising, including labeling, that "is misleading in a material respect."

69.    Defendant's marketing and labeling of Bear's Fruit Kombucha as a non-alcoholic

beverage, and the absence of the government mandated warning for alcoholic beverages, makes

such advertising false and misleading to a reasonable consumer, including Plaintiff, because Bear's Fruit Kombucha in fact contains above 0.5 percent alcohol by volume, making the product an alcoholic beverage that must bear the appropriate warning under state and federal law. Further, the lack of appropriate warning on the labels of Bear's Fruit Kombucha, in addition to the fact that the beverage is sold to persons under 21 years of age, is a serious health hazard to consumers because uninformed consumers purchase the products before driving a vehicle, operating machinery, and during pregnancy. The lack of appropriate warning and disclaimers is further a health hazard because the beverages are unwittingly consumed by persons struggling with alcohol addiction. Without the appropriate warning and notice that the beverage is alcoholic, Bear's Fruit Kombucha is an unreasonably dangerous product that is unfit for sale. Defendant's failure to comply with federal and New York labeling requirements, as well as making unlawful Health Claims, and deceptive advertising concerning the alcohol content of Bear's Fruit Kombucha offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). Accordingly, Defendant's practices are unfair, deceptive, misleading and are in violation of N.Y. Agriculture and Markets Law § 201 in that Bear's Fruit Kombucha is misbranded.

70.    The foregoing deceptive acts and practices were directed at consumers.

71.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of Bear's Fruit Kombucha to induce consumers to purchase same.

72.    Plaintiff, the Class, and New York Subclass members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair trade acts and practices, Plaintiff and members of the Classes suffered monetary losses associated with the purchase of Bear's Fruit Kombucha because (a) they would not have purchased Bear's Fruit Kombucha absent Defendant's omission of a government warning concerning the product's alcohol content; (b) they would not have purchased Bear's Fruit Kombucha absent the Health Claims; (c) they would not have purchased Bear's Fruit Kombucha on the same terms

absent Defendant's representations and omissions; (d) they paid a price premium for Bear's Fruit Kombucha due to Defendant's misrepresentations and omissions; and (e) Bear's Fruit Kombucha did not have the characteristics, benefits, or quantities as promised.

## COUNT III

## Breach of Express Warranty

73.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

74.     In connection with the sale of Bear's Fruit Kombucha, Defendant issues an express warranty that Bear's Fruit Kombucha "contains less than .5% alc by vol."

75.     Defendant's affirmation of fact and promise on Bear's Fruit Kombucha's labels that the products contained "less than .5% alc by vol" in the beverages became part of the basis of the bargain between Defendant and Plaintiff and Class members, thereby creating express warranties that the products would conform to Defendant's affirmation of fact, representations, promise, and description.

76.     Defendant breached its express warranty because Bear's Fruit Kombucha in fact contains more than .5% alcohol by volume.  In short, Bear's Fruit Kombucha does not live up to Defendant's express warranty.

77.     Plaintiff and the Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Bear's Fruit Kombucha if they had known the true facts; (b) they paid for Bear's Fruit Kombucha due to the mislabeling of the products; (c) they would not have purchased Bear's Fruit Kombucha on the same terms if they had known the true facts; (d) they paid a price premium for Bear's Fruit Kombucha due to Defendant's false warranties and affirmations of fact; and (e) Bear's Fruit Kombucha did not have the characteristics or qualities as promised.

78.     Plaintiff served Defendant with written notice of Defendant's breach of warranties within a reasonable time prior to the filing of the Complaint.

## COUNT IV

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **Breach of Implied Warranty of Merchantability**

79.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

80.    The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. To be "merchantable," goods must, *inter alia*, "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," "are adequately contained, packaged, and labeled as the agreement may require," and "conform to the promise or affirmations of fact made on the container or label if any."

81.    Defendant, through its acts and omissions set forth herein, in its sale, marketing, and promotion of Bear's Fruit Kombucha, impliedly warranted that (a) Bear's Fruit Kombucha was a non-alcoholic beverage that could be lawfully purchased and safely consumed by anyone; and that (b) Bear's Fruit Kombucha contained less than 0.5% alcohol by volume.

82.    Defendant was a merchant with respect to the goods of this kind which were sold to Plaintiff and the Classes, and there was in the sale to Plaintiff and other consumers an implied warranty that those goods were merchantable.

83.    However, Defendant breached that warranty implied in the contract for the sale of Bear's Fruit Kombucha in that the products do not contain the "quality and quantity" of kombucha beverages as impliedly warranted, and because Bear's Fruit Kombucha does not conform to the promises made on its labels, as described herein.  Defendant also breached that implied warranty because Bear's Fruit Kombucha is an unreasonably dangerous product that cannot be used or sold without the necessary government warnings concerning alcohol.

84.    As a result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods and because the goods were unreasonably dangerous and could not be used.

85.     Plaintiff and the Class members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Bear's Fruit Kombucha if they had known the true facts; (b) they paid for Bear's Fruit Kombucha due to Defendant's implied warranties; (c) they would not have purchased Bear's Fruit Kombucha on the same terms if they had known the true facts; (d) they paid a price premium for Bear's Fruit Kombucha due to Defendant's implied warranties; and (e) Bear's Fruit Kombucha did not have the characteristics or qualities as impliedly warranted.

## COUNT V

### Fraud

86.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

87.     As discussed above, Defendant failed to disclose material facts about Bear's Fruit Kombucha, including by failing to include the government mandated alcohol warning on the products' labels and by failing to disclose (and falsely misrepresenting) the fact that the beverages contain more than 0.5% alcohol by volume.  These omissions and false representations were made with knowledge that the labels are misleading.

88.     The omissions and misrepresentations made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended and actually induced Plaintiff and Class members to purchase Bear's Fruit Kombucha.

89.     The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI

### Unjust Enrichment

90.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

91.     Plaintiff and members of the Class conferred benefits on Defendant by purchasing Bear's Fruit Kombucha.

CLASS ACTION COMPLAINT                                                              26

92.     Defendant has knowledge of such benefits.

93.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Bear's Fruit Kombucha.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misleadingly omitted the required government alcohol warning on the labels of Bear's Fruit Kombucha and misrepresented and omitted the true amount of alcohol in Bear's Fruit Kombucha.  These misrepresentations and omissions caused injuries to Plaintiff and members of the Class because they would not have purchased Bear's Fruit Kombucha had the true facts been known.

94.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a)  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

b)  For an order declaring that Defendant's conduct violates the statutes referenced herein;

c)  For an order finding in favor of Plaintiff, the Class and the Subclass on all counts asserted herein;

d)  For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e)  For prejudgment interest on all amounts awarded;

f)  For an order of restitution and all other forms of equitable monetary relief;

g) For equitable or injunctive relief, including for restraining sales without truthful labeling, or as the Court may deem proper including public injunctive relief as may be permitted by applicable law; and

h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demand a trial by jury of all issues so triable.

Dated: October 30, 2024                    Respectfully submitted,


**GOLDBERGER & DUBIN, PC**

By:    _/s/_____
Stacey Van Malden, Esq.
401 Broadway, Suite 306
New York, New York 10013
Phone: 212-431-9380
E-Mail: GND401@AOL.COM


**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (Cal. Bar No. 295032)*
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (Cal. Bar No. 244902)*
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*To be admitted *Pro Hac Vice*

*Attorneys for Plaintiff*